

JUDGE COTE   11 CIV 7355

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

TRUSTEES OF THE IATSE NATIONAL  :
HEALTH AND WELFARE FUND AND     :
THE IATSE ANNUITY FUND,          :
                                 :
                    Plaintiffs,  :
                                 :
        -against-                :
                                 :
BLACK WALNUT LLC,                :
                                 :
                    Defendant.   :
                                 :
-----------------------------------------------------------------X

RECEIVED OCT 18 2011 U.S.D.C. S.D. N.Y. CASHIERS

COMPLAINT

       Plaintiffs, the Trustees of the IATSE National Health and Welfare Fund ("Health Fund")

and the IATSE Annuity Fund ("Annuity Fund"; both Funds shall be collectively referred to as "the

Funds"), by and through their counsel, Spivak Lipton LLP, bring this action to compel Defendant

Black Walnut LLC ("Employer") to remit benefit fund contributions, interest and liquidated

damages owed pursuant to the Employee Retirement Income Security Act of 1974, as amended

("ERISA").  Complaining of Defendant, Plaintiffs respectfully allege as follows:

## JURISDICTION

       1.     This Court has jurisdiction over this action against the Defendant under

Sections 502(a)(3), 502(e)(1), 502(e)(2), and 502(f) of ERISA, 29 U.S.C. §§ 1132(a)(3),

1132(e)(1), 1132(e)(2), and 1132(f), and Section 301 of the Labor Management Relations Act. 29

U.S.C. § 185.

## PARTIES

       2.     At all relevant times Plaintiffs have administered and now administer the

Funds.

3.      The Funds were established pursuant to a collective bargaining agreement in 1973 and by the Agreement and Declaration of Trust of the Funds.

4.      The Funds are "employee benefit" plans established under Section 302(c)(5) of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 186(c)(5), and within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3).  The principal place where the Funds are administered is 417 Fifth Avenue, 3rd Floor, New York, New York 10016.

5.      The purpose of the Funds is to receive contributions from employers who are parties to collective bargaining agreements with the International Alliance of Theatrical Stage Employees Moving Picture Technicians, Artists and Allied Crafts of the United States and Canada ("IATSE") and its affiliated locals, to invest and maintain those monies, and to provide health, welfare and retirement benefits to those qualified to receive them.

6.      Upon information and belief, Defendant Employer is a corporation organized and existing under the laws of the State of New York with its principal place of business at 618 Corporate Way, Unit 2, Valley Cottage, NY 10989.  It is an employer engaged in an industry affecting commerce within the meaning of Sections 3(5), 3(11), 3(12), and 4(a)(1) of ERISA, 29 U.S.C. §§ 1002(5), 1002(11), 1002(12), and 1003(a)(1), and of Sections 2(2), 2(6), and 2(7) of the LMRA, 29 U.S.C. §§ 152(2), 152(6), and 152(7).

## FACTS

7.      Defendant Employer employed various employees represented by IATSE Local 645 ("Local 645") at all relevant times.

8.      Defendant Employer has at all relevant times been party to consecutive

2

Collective Bargaining Agreements with Local 645. A copy of the Collective Bargaining

Agreement covering the period October 1, 2008 through December 31, 2010 ("2010 Agreement")

is attached hereto as Exhibit A. A copy of the Collective Bargaining Agreement covering January 1,

2011 through December 31, 2011 ("2011 Agreement") is attached hereto as Exhibit B.

9.     Under the terms of the 2010 Agreement, the Defendant Employer agreed to

make contributions to the Annuity Fund in an amount equal to 3% of each employee's hourly

wages, as well any applicable 401(k) withholding as directed by the employee. Exhibit A, page A-5,

Section 12. Under the terms of the 2011 Agreement, the Defendant Employer agreed to make

contributions to the Annuity Fund in an amount equal to 4% of each employee's hourly wages, as

well any applicable 401(k) withholding as directed by the employee. Exhibit B, page B-7, Section

14.

10.     Under the 2011 Agreement, the Defendant Employer agreed make

contributions to the Health Fund in an amount equal to $43.50 per day of pay for each employee,

with a maximum weekly contribution of $217.50, on behalf of each employee. Exhibit B, page B-

6, Section 10.

11.     Upon information and belief, the Defendant has failed to make substantial

contributions, including 401(k) withholdings, to the Annuity Fund for work performed in weeks

ending April 3, 2010 through August 27, 2011. Of $98,094.61 due to the Annuity Fund for this

period, the Defendant has only remitted $4,760.22 and remains delinquent to the Annuity Fund in

the principal amount of $93,334.39.

12.     Upon information and belief, the Defendant has failed to make substantial

contributions to the Health Fund for work performed in weeks ending January 1, 2011 through

August 27, 2011. Of $149,292.00 in contributions due for this period, the Defendant has remitted

$108,314.50 and thus remains delinquent to the Health Fund in the principal amount of $40,977.50.

13.     The total principal amount of the Defendant's delinquency to both Funds for work performed in weeks ending April 3, 2010 through August 27, 2011 is $134,311.89.

14.     Additionally, Defendant continues to employ members of Local 645, and required contributions will continue to accrue. Contributions for each month worked become due on the 10th of the month following the month in which the work was performed. Defendant's contributions to the respective Funds for September 2011, estimated to be approximately $15,000 to the Health Fund and $5,000 to the Annuity Fund, became due on October 10, 2011. However, Defendant's have only made payments to the Funds for the workweek ending September 17, 2011, in the amounts of $1,826.65 to the Annuity Fund and $4,751.50 to the Health Fund. Plaintiff remains delinquent for this period in the estimated amount of $14,000.00.

15.     Plaintiffs, on their own behalf and on behalf of all employees for whose benefit the Funds were established, have requested the Defendant to perform its obligations, but the Defendant has failed to do so.

16.     Defendant's failure to make required payments violates both the Agreement and the provisions of ERISA. Plaintiffs seek enforcement of these provisions pursuant to Section 502(a)(3)(b)(ii) of ERISA, as amended by the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. §§ 1132(a)(3)(b)(ii).

17.     Plaintiffs are without an adequate remedy at law and will suffer immediate, continuing and irreparable injury and damage unless the Defendant is ordered to specifically perform its obligations required under the Agreement and is restrained from continuing to refuse to perform as thereunder required.

## STATEMENT OF CLAIM

### COUNT I

18.     Plaintiffs repeat and reallege all the allegations of Paragraphs 1 through 17 inclusive.

19.     Therefore, Defendant is liable to Plaintiffs under ERISA for delinquent benefits and contributions regarding its employees in the following approximate amounts:

    (a)     $134,311.89 in unpaid contributions for work performed during the period April 3, 2010 through August 27, 2011;

    (b)     An estimated $14,000.00 in unpaid contributions for work performed September 2011.

    (c)     Interest on all unpaid contributions;

    (d)     Liquidated damages of 20 percent of the unpaid contributions;

    (e)     Attorneys' fees; and

    (f)     Costs of this action.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully request entry of a Judgment against Defendant and in favor of Plaintiffs

    (a)     for unpaid contributions to the Funds in the amount of $134,311.89 for the period April 3, 2010 through August 27, 2011 in the amount

    (b)     unpaid contributions to the Funds for work performed in September 2011 in an amount to be determined but estimated at $14,000.00, along with all

5

additional unpaid contributions as of the date of judgment pursuant to 29 U.S.C. § 1132(g)(2)(A);

(b)     for interest on said unpaid contributions pursuant to 29 U.S.C. § 1132(g)(2)(B);

(c)     for liquidated damages pursuant to 29 U.S.C. § 1132(g)(2)(C);

(d)     for costs, including reasonable attorneys' fees, incurred in the prosecution of this action pursuant to 29 U.S.C. § 1132(g)(2)(D);

(e)     that Defendant be specifically compelled to produce such payroll records as will verify the amount of contributions owed;

(f)     that Defendant be specifically ordered to pay to Plaintiffs the required contributions due and owing as of the present date, as well as all contributions that may be due and owing as of the date of entry of judgment, together with applicable interest, liquidated damages, costs and fees;

(g)     that this Court retain jurisdiction to enforce the Defendant's continuing obligations under the applicable provisions of the Agreement; and

(h)     for such other and further relief as the Court may deem just and proper.

Dated:  New York, New York
        October 17 2011

SPIVAK LIPTON LLP
1700 Broadway, 21st Floor
New York, New York  10019
Tel:  (212) 765-2100
Fax:  (212) 765-8954


Attorneys for the Plaintiffs


By:_____
        Thomas Michael Feeley (TF 1489)
        tfeeley@spivaklipton.com

# EXHIBIT A

10⁵⁴

AGREEMENT

Between

The International Alliance Of Theatrical Stage Employees, Moving Picture
Technicians, Artists and Allied Crafts Of The United States, Its Territories And
Canada, AFL-CIO, CLC, Local #645

And

Black Walnut LLC

618 Corporate Way, Unit 2

Valley Cottage, N.Y. 10989

1054

Black Walnut, LLC - (L-645)

01/15/09 - CK

This agreement made in duplicate on October 1st of 2008, between:

Black Walnut LLC,

hereinafter referred to as "Black Walnut"

-and-

The International Alliance Of Theatrical Stage Employees, Moving Picture Technicians, Artists and Allied Crafts Of The United States, Its Territories And Canada, AFL-CIO, CLC, Local #845

Hereinafter referred to as the "UNION".

1.  Recognition

Black Walnut recognizes UNION as the sole bargaining representative for employees within the jurisdiction of the Union.

2.  Scope and jurisdiction

This agreement shall cover, apply to and include all work other than scenic art done by Black Walnut within Rockland County in the construction, fabrication, assembly, repair or operation of all mechanical and electrical equipment, scenery, travelers and related technical items for theatrical or other presentational use.

3.  Work week

3.1. The basic work week shall consist of five (5) days, Monday through Friday, with eight (8) hours worked each day.  The basic workday shall be from 7:00am to 12:00 pm, and from 12:30 pm to 3:30 pm.

3.2. Employees get a paid fifteen minute break within every four hours worked.

3.3. Employees get a unpaid half hour meal break for every five hours worked.

4.  Overtime and Penalties

4.1. All overtime and penalties shall be approved by Black Walnut in advance.

4.2. The overtime rate of pay shall be one and one half (1 & 1/2) times the straight time hourly rate of pay.

4.3. The double time rate of pay shall be two (2) times the straight time hourly rate of pay.

4.4. Vacation, Sick, Holiday, and Bereavement pay shall not be used when calculating overtime hours worked.

4.5. Overtime shall be paid when any of the following conditions occur:

4.5.1.  An employee works anytime between the hours of 12:00am and 7:00am Monday through Saturday.

4.5.2.  An employee works any hours in excess of eight (8) in a single straight time work day.

4.5.3.  An employee works any hours in excess of forty (40) straight time hours in a single work week.

4.5.4.  An employee works any hour between 5:00pm and 11:59pm Saturday.

4.5.5.   An employee works on an unpaid holiday.

4.6. Double time shall be paid when and of the following conditions occur:

4.6.1.   An employee works any hours between 12:00am Sunday and 7:00am Monday.

4.6.2.   An employee works in excess of sixty four (64) hours in a work week.  Hours worked within this period shall be paid at double time until there is an eight (8) hour rest period.

4.6.3.   An employee works a paid holiday.

4.7. If for any reason an employee works in excess of five hours without a meal break, a penalty of one additional hour at overtime rate shall be paid.

5.  Out-of-shop work

5.1. Time worked out-of-shop and within a seventy five (75) mile radius of Valley Cottage, New York shall be compensated at the shop rates of pay.

5.2. For time worked out-of-shop and more than seventy five (75) miles away from Valley Cottage, New York, compensation shall be one and one half (1-1/2) times the straight time hourly rate for straight time worked, and two (2) times the straight time hourly rate for overtime hours worked.

5.3. All travel which is required for out-of-shop work more than seventy five (75) miles away from Valley Cottage, New York shall be paid at the straight time hourly rate.

6.  Holidays

6.1. New Year's Day, President's Day, Memorial Day, The Fourth of July, Monday July 5, 2010 Labor Day, Thanksgiving Day, and Christmas Day shall be a paid holiday for employees who have worked fifteen (15) of the thirty (30) work days prior to the holiday. If the employee does not work on the holiday, the employee shall receive a basic workday's pay at the employee's rate of pay.  If the employee does work on the holiday, time worked shall be paid at the double time rate of pay.

6.2. The following shall be unpaid holidays.  Time worked on an unpaid holiday shall be paid at the overtime rate of pay.

Friday November 28, & Friday December 26, 2008.

Friday January 2, Friday July 3, Friday November 27, & Thursday December 24, 2009.

Saturday January 2, Saturday July 3, Friday November 26, Friday December 24, & Friday December 31, 2010.

7.  Rates of pay

| | 2008-2009 | 2010 |
|---|---|---|
| Foreman | | |
| Straight time hourly rate | 32.64 | 33.62 |
| Overtime rate | 48.96 | 50.43 |
| Double time rate | 65.28 | 67.24 |

Layout

| | | | |
|---|---|---|---|
| Straight time hourly rate | 28.14 | 28.99 |
| Overtime rate | 42.21 | 43.47 |
| Double time rate | 56.28 | 57.97 |

Journeyman

| | | | |
|---|---|---|---|
| Straight time hourly rate | 25.88 | 26.65 |
| Overtime rate | 38.83 | 39.99 |
| Double time rate | 51.77 | 53.32 |

Shop man

| | | | |
|---|---|---|---|
| Straight time hourly rate | 18.00 | 18.54 |
| Overtime rate | 27.00 | 27.81 |
| Double time rate | 36.00 | 37.08 |

Effective January 1, 2010 there will be a 3% increase in all pay rates as shown above under "2010."

8.  Health and Welfare

Black Walnut agrees to contribute to the "I.A.T.S.E. National Health and Welfare Fund" $39.00 per day of pay with a maximum of five days per employee per week, making a maximum contribution of $195.00 per week for each working employee. These contributions shall be remitted monthly by check payable to the "I.A.T.S.E National Health and Welfare Fund" no later than the tenth (10th) day of each month for the preceding month.  In conjunction with each such payment, Black Walnut shall submit a remittance report showing the names of the employees for whom contributions are being made, their Social Security numbers, their dates of employment, the number of days worked and the amount of the contribution for them.  The parties agree to execute the standard form of the Participation Agreement (the "Trust Acceptance Agreement") provided by the "I.A.T.S.E. National Health and Welfare Fund", the filing of which shall be a condition of their participation.

9.  Local 645 Assessment

When an employee has provided Black Walnut with written authorization, Black Walnut agrees that it will deduct one percent (1%) of that employee's hourly wages.  The deductions shall be remitted monthly by check to "Local 645", to the trustee as designated by the UNION.  With each remittance Black Walnut shall furnish a listing of the names of the employees on whose account the deductions were made and their earnings for the payroll period.

10. Vacation

10.1. After six (6) consecutive months or twelve (12) months cumulative within a 48-month period, each employee shall be eligible to a vacation allowance equal to five (5) working days of the employee's straight time hourly earnings in the first two years of employment.

10.2. After the third year of employment each employee shall be entitled to a vacation allowance equal to ten (10) working days of the employee's straight time hourly earnings.

10.3. The vacation allowance shall be paid the week that vacation time is used. The vacation allowance is subject to withholding taxes.

## 11. Bereavement leave

Black Walnut agrees that each employee shall be entitled to three (3) days paid bereavement leave in the event of the death of an immediate family member (spouse, children, parents, siblings, and parental in-laws)

## 12. Annuity

Black Walnut LLC agrees to contribute to "IATSE Annuity Fund" an amount equal to three percent (3.0%) of the employee's hourly wages. Additionally, Black Walnut agrees to withhold individual 401k contributions as directed by employees wishing to defer a portion of their pretax income to the annuity plan. These contributions shall be submitted by check payable to the "IATSE Annuity Fund," IATSE National Benefits Funds, 55 West 39th Street, 5th Floor, New York, NY 10018, no later than the tenth day of each month. In conjunction with this payment, Black Walnut shall submit a remittance report showing the name, social security number, dates and hours worked, and the amount of the contribution for each employee. Employer agrees to be bound by all of the terms and provisions of the Agreement and Declaration of Trust (the "Trust Acceptance Agreement") establishing the IATSE Annuity Fund (the "Annuity Fund") dated February 1, 1995, as amended and the Annuity Fund's Statement of Policy and Procedures for Collection of Contributions Payable by Employers (the "Collection Guidelines") and to be represented in the administration of the Annuity Fund by the Employer Trustees therein named or by their successors.

## 13. Layoff

If an employee is to be laid off, the employee shall be notified of such layoff no later than 12:30 p.m. of the 2nd basic working day preceding the commencement of the layoff.

## 14. Safety

Black Walnut agrees that employees shall at all times be surrounded with reasonable safeguards while working. Black Walnut agrees to carry Employer's Liability and Workers Compensation Insurance.

## 15. Stencil

All scenery, properties, equipment or other materials constructed by the employees shall bear the Union's stencil, which shall be supplied by the UNION.

## 16. Prior Obligations

The UNION is a member of The International Alliance Of Theatrical Stage Employees, Moving Picture Technicians, Artists And Allied Crafts Of The United States, Its Territories And Canada, AFL-CIO, CLC, and Black Walnut shall therefore not require the UNION to do any act or omit to do any act or accept any obligation which is inconsistent with the duties and obligations which are imposed upon the UNION or its members by the Constitution and By-Laws of the International providing that the foregoing shall in no event be construed or applied

so as to contravene any applicable Federal, State or Local law or the terms of this agreement. The UNION acknowledges that no clause within the agreement is in violation of the Constitution and By-Laws of the International.

17. Strike/Lockout

During the term of this agreement, the UNION and its members shall not strike, slow down or engage in a sympathy strike against Black Walnut, nor shall Black Walnut lock out the UNION or its members.

18. Access to Premises

The Business Agent of the UNION or UNION representative shall be admitted at all reasonable times to supervise the working conditions of the employees within the jurisdiction of the UNION.

19. Severability

In the event that any of the provisions of this agreement are adjudged to be in violation of Federal, State or Local law, such provisions shall then be inoperative. All other provisions of this agreement shall remain in full force and effect. The parties shall negotiate to replace such unlawful provisions with legal ones most reflective of the parties' prior intent and consistent with applicable law.

20. Duration

This agreement shall commence October 1, 2008, and shall terminate on December 31, 2010. At least sixty (60) days prior to its expiration, Black Walnut and the UNION shall meet and confer for the purpose of negotiating the terms of a new agreement to take effect.


Black Walnut LLC

618 Corporate Way, Unit 2

Valley Cottage, N.Y. 10989

By: _____

Date: _9/25/08_____

The International Alliance Of Theatrical Stage Employees, Moving Picture Technicians, Artists and Allied Crafts Of The United States, Its Territories And Canada, AFL-CIO, CLC, Local #845, Rockland County, NY.

By: _____

Date: __9-24-2008_____

# EXHIBIT B

AGREEMENT effective January 1, 2011 through and including December 31, 2011, by and between Black Walnut LLC (hereinafter referred to as "Black Walnut") and LOCAL 645 of the International Alliance of Theatrical Stage Employees, Moving Picture Technicians, Artists and Allied Crafts of the United States, its Territories, and Canada AFL-CIO, CLC (hereinafter referred to as "Union")

WHEREAS, the parties hereto desire to enter into an agreement for the purpose of establishing minimum rates of pay and conditions under which employees of Black Walnut shall be employed.

NOW, THEREFORE, in consideration of the mutual covenants herein contained, the parties hereto agree as follows:



1

1. Recognition – Black Walnut recognizes Union as the sole bargaining representative for employees within the jurisdiction of the Union.

2. Scope and jurisdiction – This agreement shall cover, apply to, and include all work other than scenic art done by Black Walnut within Rockland County in the construction, fabrication, assembly, repair or operation of all mechanical and electrical equipment, scenery, travelers and related technical items for theatrical or other presentational use.

3. Union Security – To the extent permitted by law, all employees in the employ of Black Walnut as of January 1, 2011, and all such employees thereafter hired shall, as a condition of employment, be or become members of IATSE not later than sixty (60) days following the employee's first date of service, and all such employees, upon being or becoming members of IATSE as aforesaid, shall be required, as a condition of continued employment, to maintain such membership.

4. Work week

   4.1. The basic work week shall consist of five (5) days, Monday through Friday, with a minimum of eight (8) hours worked each day.

   4.2. Calls outside the basic work week, and/or after 40 hours in one (1) week shall be subject to a four (4) hour minimum.

   4.3. Employees get a paid fifteen minute break within every four hours worked.

   4.4. Employees get an unpaid half hour meal break for every five hours worked.

5. Layoff – Black Walnut shall give 48 hours notice to any employee subject to possible layoff.

6. Rates of Pay

   6.1. 2011 pay rates for those employed by Black Walnut prior to January 1, 2011 shall be frozen at the highest regular hourly rate for each employee from 2010 for the duration of this contract.

      6.1.1. This rate shall be subject to all Overtime, Double time, Penalty, and Holiday conditions.

      6.1.2. This rate freeze shall not apply to raises based on merit or changes in job responsibility.

      6.1.3. Pay rates listed shall apply only to employees hired after January 1, 2011.

      6.1.4. Black Walnut recognizes these rates reflect a five percent (5%) reduction in 2010 rates, furthermore that this reduction is a temporary condition that shall expire December 31, 2011.

      6.1.5. Upon expiration these rates shall return to their 2010 amounts, the new rates of

2

"Facility" and "Onsite Shop Representative" shall be subject to a five percent (5%) increase close of business day December 31, 2011.

6.2. Facility – Duties & Skills include clean up, truck loading, material handling, forklift operation
    6.2.1.  Straight time hourly rate $14.00
    6.2.2.  Overtime hourly rate $21.00
    6.2.3.  Double time hourly rate $28.00

6.3. Shop man – Duties & Skills include tool use, supervised project work
    6.3.1.  Straight time hourly rate $17.61
    6.3.2.  Overtime hourly rate $26.42
    6.3.3.  Double time hourly rate $35.23

6.4. Journeyman – Duties & Skills include project fabrication or drafting from construction drawings
    6.4.1.  Straight time hourly rate $25.32
    6.4.2.  Overtime hourly rate $37.98
    6.4.3.  Double time hourly rate $50.64

6.5. Onsite Shop Representative – Duties & Skills include project prep, onsite supervision and/or assembly
    6.5.1.  Straight time hourly rate $27.00
    6.5.2.  Overtime hourly rate $40.50
    6.5.3.  Double time hourly rate $54.00

6.6. Layout – Duties & Skills project fabrication or drafting from designer drawings
    6.6.1.  Straight time hourly rate $27.54
    6.6.2.  Overtime hourly rate $41.31
    6.6.3.  Double time hourly rate $55.08

6.7. Foreman – Duties include cut lists, assembly, supervised project work
    6.7.1.  Straight time hourly rate $31.94
    6.7.2.  Overtime hourly rate $47.91
    6.7.3.  Double time hourly rate $63.88

7. Overtime, Double time, and Penalties

7.1. All overtime and penalties shall be approved by Black Walnut in advance.

7.2. The overtime rate of pay shall be one and one half (1 & 1/2) times the straight time hourly rate of pay.

7.3. The double time rate of pay shall be two (2) times the straight time hourly rate of pay.

3

7.4. Vacation, Sick, Holiday, and Bereavement pay shall not be used when calculating overtime hours worked.

7.5. Overtime shall be paid when any of the following conditions occur:

    7.5.1.  An employee works anytime between the hours of 12:00am and 7:00am Monday through Saturday.

    7.5.2.  An employee works any hours in excess of eight (8) in a single straight time work day.

    7.5.3.  An employee works any hours in excess of forty (40) straight time hours in a single work week.

    7.5.4.  An employee works on an unpaid holiday.

    7.5.5.  For each hour worked after 5 hours without a meal break.

7.6. Double time shall be paid when any of the following conditions occur:

    7.6.1.   An employee works any hours between 12:00am and 11:59pm Sunday.

    7.6.2.  An employee works in excess of sixty four (64) hours in a work week.  Hours worked within this period shall be paid at double time until there is an eight (8) hour rest period.

    7.6.3.  An employee works a paid holiday.

8.  Out of Shop Work

8.1. Home to Work on a Special One Day Assignment in another City: *An employee required to travel to another city for a one day engagement who returns home the same day.*

    8.1.1.  The time spent traveling to and from the jobsite will be compensated as time worked.

    8.1.2.  When work and travel time exceed 16 hours Black Walnut shall provide one of the following, at their discretion
        8.1.2.1.  Hotel and per diem
        8.1.2.2.  Transportation to and from Job site
        8.1.2.3.  A $200 penalty payment

    8.1.3.  Travel time and onsite time will be paid as shop time and will be subject to the

4

same Overtime, Double time, Penalty, and Holiday conditions.

8.2. Travel away from Home Community: *Travel that keeps an employee away from home overnight.*

    8.2.1. An employee traveling to a city where they are required to spend the night will be compensated at the prevailing rate for up to eight hours of travel in a given work day. When traveling internationally an employee may be paid for up to sixteen hours if travel impacts the next business day. Employees traveling internationally are required to obtain written approval from the Sr. Project Manager prior to departure for 16hr pay.

    8.2.2. Onsite Bonus (Excludes Onsite Shop Representatives) Black Walnut shop labor working in a venue outside the shop will receive a $40 bonus for each day worked outside the shop. Black Walnut labor acting as an onsite supervisor of a non-Black Walnut crew will be given a $75 bonus for each day worked.

    8.2.3. Standby Time will be paid to employees who travel away from home community and are waiting to be engaged.  Stand by time will be paid as straight time 8 hours per day.

    8.2.4. Prescheduled off days away from home community will be paid for 4 hours at the straight time rate of pay.

    8.2.5. In the event Standby time and/or Prescheduled off days are consecutive, Black Walnut shall either pay return travel home or pay the appropriate time as listed in 8.2.3. and 8.2.4, at their discretion.

    8.2.6. All employees traveling away from home community are guaranteed compensation equal to 40 hours straight time pay for each 7day week they are on site. Please reference US Depart of labor Fair labor standards for applicable definitions.

8.3. Onsite Shop Representatives will be paid at straight time for all on-site work, regardless of distance from shop. All Overtime, Double time, Penalty, and Holiday conditions apply.

8.4. Black Walnut will not send employees to work on a job site outside Union's Jurisdiction in an effort to avoid and/or circumvent an IATSE Local that may have jurisdiction over that site.

9. Holidays

9.1. New Year's Day, President's Day, Memorial Day, The Fourth of July, Labor Day, Thanksgiving Day, November 25, 2011, and Christmas Day shall be a paid holiday for employees who have worked fifteen (15) of the thirty (30) workdays prior to the holiday. If the employee does not work on the holiday, the employee shall receive a basic

5

workday's pay at the employee's rate of pay.  If the employee does work on the holiday, time worked shall be paid at the double time rate of pay

9.2. April 22, 2011, July 5, 2011, and December 26, 2011 shall be unpaid holidays.  Should an employee work on any of these days Black Walnut agrees to pay the Overtime rate.

10. Health and Welfare

10.1. Black Walnut agrees to contribute to the "I.A.T.S.E. National Health and Welfare Fund" **$43.50** per day of pay with a maximum of five days per employee per week, making a maximum contribution of **$217.50** per week for each working employee.  These contributions shall be remitted monthly by check payable to the "I.A.T.S.E National Health and Welfare Fund," IATSE National Benefits Funds, 417 Fifth Avenue, 3rd Floor, New York, NY 10016-2204, no later than the tenth (10th) day of each month for the preceding month.  In conjunction with each such payment, Black Walnut shall submit a remittance report showing the names of the employees for whom contributions are being made, their Social Security numbers, their dates of employment, the number of days worked and the amount of the contribution for them.  The parties agree to execute the standard form of the Participation Agreement (the "Trust Acceptance Agreement") provided by the "I.A.T.S.E. National Health and Welfare Fund", the filing of which shall be a condition of their participation.

11. Local 645 Assessment

11.1. When an employee has provided Black Walnut with written authorization, Black Walnut agrees that it will deduct one percent (1%) of that employee's hourly wages.  The deductions shall be remitted monthly by check to "Local 645," 18 Wampum Road, Park Ridge, NJ, 07656, to the trustee as designated by the UNION.  With each remittance Black Walnut shall furnish a listing of the names of the employees on whose account the deductions were made and their earnings for the payroll period.

12. Vacation

12.1. After 120 days worked within a calendar year each employee shall be eligible to a vacation allowance equal to five (5) working days of the employee's straight time hourly earnings in the first two years of employment. Vacation days must be taken as "whole days".

12.2. After the second year of employment each employee shall be entitled to a vacation allowance equal to ten (10) working days of the employee's straight time hourly earnings.

13. Bereavement leave

13.1. Black Walnut agrees that each employee shall be entitled to three (3) days paid bereavement leave in the event of the death of an immediate family member (spouse, children, parents, siblings, and parental in-laws)

14. Annuity and 401k

    14.1. Black Walnut agrees to contribute to "IATSE Annuity Fund" an amount equal to four percent (4.0%) of the employee's hourly wages.  Additionally, Black Walnut agrees to withhold individual 401k contributions as directed by employees wishing to defer a portion of their pretax income to the annuity plan.  These contributions shall be submitted by check payable to the "IATSE Annuity Fund," IATSE National Benefits Funds, 417 Fifth Avenue, 3rd Floor, New York, NY 10016-2204, no later than the tenth day of each month.  In conjunction with this payment, Black Walnut shall submit a remittance report showing the name, social security number, dates and hours worked, and the amount of the contribution for each employee.  Employer agrees to be bound by all of the terms and provisions of the Agreement and Declaration of Trust (the "Trust Acceptance Agreement") establishing the IATSE Annuity Fund (the "Annuity Fund") dated February 1, 1995, as amended and the Annuity Fund's Statement of Policy and Procedures for Collection of Contributions Payable by Employers (the "Collection Guidelines") and to be represented in the administration of the Annuity Fund by the Employer Trustees therein named or by their successors.

15. Safety - Black Walnut agrees that employees shall at all times be surrounded with reasonable safeguards while working.

16. Stencil - All scenery, properties, equipment or other materials constructed by the employees shall bear the Union's stencil, which shall be supplied by the UNION.

17. Prior Obligations - Union is a member of The International Alliance Of Theatrical Stage Employees, Moving Picture Technicians, Artists And Allied Crafts Of The United States, Its Territories And Canada, AFL-CIO, CLC, and Black Walnut shall therefore not require Union to do any act or omit to do any act or accept any obligation which is inconsistent with the duties and obligations which are imposed upon Union or its members by the Constitution and By-Laws of the International providing that the foregoing shall in no event be construed or applied so as to contravene any applicable Federal, State or Local law or the terms of this agreement.  Union acknowledges that no clause within the agreement is in violation of the Constitution and By-Laws of the International.

18. Strike/Lockout - During the term of this agreement, Union and its members shall not strike, slow down or engage in a sympathy strike against Black Walnut, nor shall Black Walnut lock out the Union or its members.

19. Access to Premises - The Business Agent of the Union or Union representative shall be admitted at all reasonable times to supervise the working conditions of the employees within the jurisdiction of the Union.

20. Severability - In the event that any of the provisions of this agreement are adjudged to be in violation of Federal, State or Local law, such provisions shall then be inoperative.  All other provisions of this agreement shall remain in full force and effect.  The parties shall negotiate to replace such unlawful provisions with legal ones most reflective of the parties' prior intent and consistent with applicable law.

21. Black Walnut warrants that it will make all payroll-related deductions and payments and file all forms required under federal, state, and local law on behalf of employees covered by this

agreement. Black Walnut further warrants that it has in place workers' compensation, disability, and unemployment insurance coverage as required under applicable law.

22. Minimum Conditions – All wages, benefits, hours, and working conditions set forth in this agreement are minimum conditions only.  Employees are entitled to negotiate better conditions with Black Walnut on an individual basis, provided that any resulting agreement may not abrogate any of the conditions of this agreement.  Any employee enjoying better conditions will not have his or her wages, benefits, hours, and working conditions reduced in any way as a result of this agreement.

23. Term – This agreement shall be effective as of January 1, 2011 and remain in full force and effect through and including December 31, 2011

8

In Witness Whereof, this contract is made in duplicate and the parties have affixed their signatures this 30th day of December, 2010.

Black Walnut LLC
618 Corporate Way, Unit 2
Valley Cottage, N.Y. 10989

_____        MANAGING PARTNER        JACOB GENDELMAN
(Signature of Authorized Officer)        (Title)        (Print Name)

The International Alliance Of Theatrical Stage Employees, Moving Picture Technicians, Artists and Allied Crafts Of The United States, Its Territories And Canada, AFL-CIO, CLC, Local #645, Rockland County, NY.

_____        Business Agent        Brian McGarity
(Signature of Authorized Officer)        (Title)        (Print Name)

9